UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                 Plaintiff,<br>     v.<br><br>JAMES DEAN STACY,<br><br>                                 Defendant. | CASE NO. 09cr3695 BTM<br><br>**ORDER DENYING MOTIONS TO DISMISS INDICTMENT** |

Defendant James Dean Stacy has filed (1) a motion to dismiss the Indictment because it is in violation of the Tenth Amendment; (2) a motion to dismiss the Indictment as a violation of due process; and (3) a motion to dismiss the Indictment because the prosecutor is acting in direct conflict with the U.S. Department of Justice policy. On January 20, 2010, the Court held a hearing on Defendant's motions. For the reasons discussed below, Defendant's motions to dismiss the Indictment are **DENIED**.

**I. FACTUAL BACKGROUND**

From June 2009 until September 2009, Defendant operated what he claims was a "medical marijuana collective" called "Movement in Action," located at 1050 South Santa Fe Avenue, Vista, California. According to Defendant, he took great care to make sure that his cooperative was formed and operated in compliance with California law, specifically the Compassionate Use Act ("CUA") and the Medical Marijuana Program Act ("MMPA"), Cal.

Health & Safety Code §§ 11362.5, et seq., 11362.7.

In July and August of 2009, Defendant sold marijuana on three separate occasions to an undercover detective from the San Diego Sheriff's Office. Each time, Defendant charged $60 for an eighth of an ounce of marijuana.

On September 9, 2009, there was a county-wide raid, which resulted in the arrests of Defendant and thirteen other individuals who operated collectives in San Diego. DEA agents executed search warrants at Defendant's home and business, seizing 96 marijuana plants, marijuana-laced food products, marijuana-related equipment and paraphernalia, business records, and a fully-loaded FEG semi-automatic pistol.

In an Indictment filed on October 7, 2009, Defendant was charged with (1) conspiracy to manufacture and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) manufacturing 96 marijuana plants in violation of 21 U.S.C. § 841(a)(1); and (3) possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1).

## II. DISCUSSION

Defendant contends that these criminal proceedings against him are in direct conflict with the Fifth and Tenth Amendments to the United States Constitution. As discussed below, the Court is not persuaded by Defendant's arguments.

A. Tenth Amendment Claim

Defendant argues that by prosecuting him and others like him, the federal government is subverting state medical marijuana laws in violation of the Tenth Amendment. Specifically, Defendant alleges that the federal government "commandeered" state officials to "re-criminalize medical marijuana."

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Under the Tenth Amendment, Congress may not simply "commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal

1  regulatory program." New York v. United States, 505 U.S. 144, 161 (1992) (quoting Hodel
2  v. Virginia Surface Mining & Reclamation Ass'n Inc., 452 U.S. 264, 288 (1981)).  See also
3  Printz v. United States, 52 U.S. 898, 925 (1997) ("[T]he Federal Government may not compel
4  the States to implement, by legislation or executive action, federal regulatory programs.")

6        As an initial matter, Defendant lacks standing to allege a Tenth Amendment violation.
7  In Tenn. Elec. Power Co. v. Tenn. Valley Auth., 306 U.S. 118 (1939), the Supreme Court
8  rejected an argument by state-chartered utility companies that the sale of electrical power
9  by a federally-chartered corporation, which drove down electricity rates, amounted to federal
10 regulation in violation of the Tenth Amendment.  The Supreme Court reasoned that the sale
11 of government property in competition with others is not a violation of the Tenth Amendment.
12 The Supreme Court continued:

> As we have seen there is no objection to the Authority's operations by the states, and, if this were not so [i.e., if the sale of government property in competition with others constituted a violation of the Tenth Amendment], the appellants, absent the states or their officers, have no standing in this suit to raise any question under the amendment.

16 Id. at 144.  Relying on Tenn. Elec., the Ninth Circuit has held: "Only states have standing to
17 pursue claims alleging violations of the Tenth Amendment by the federal government."
18 Oregon v. Legal Services Corp., 552 F.3d 965, 972 (9th Cir. 2009).  See also Brooklyn Legal
19 Services Corp. v. Legal Services Corp., 462 F.3d 219, 235 (2d Cir. 2006) (explaining that
20 Tenn. Elec.'s standing-based reasoning was not dicta, but, rather, was essential to its holding
21 and thus binding).

22       Neither the state nor its officers are parties to this case.  Therefore, Defendant lacks
23 standing to assert a violation of the Tenth Amendment.

24       Even assuming Defendant has standing to allege a violation of the Tenth Amendment,
25 Defendant has not established that any "commandeering" occurred.  Defendant argues that
26 the San Diego Sheriffs were commandeered to help enforce the CSA against Defendant.
27 Defendant points out that after the San Diego Sheriff's Office allegedly received complaints
28 about Defendant's collective, the Sheriff's Office conducted surveillance on the location and

investigated him. Later, Detective Craig Johnson from the Sheriff's Office made the controlled buys in an undercover capacity. According to Defendant, evidence obtained from the controlled buys are being stored at the San Diego County Sheriff's Department. Furthermore, in preparation of the affidavit to the search warrant, the federal agent used the experience of Detective Conrad De Castro of the San Diego Police Department concerning the use of computers by illegal marijuana dispensaries.

Although the San Diego County Sheriff's Department unquestionably had involvement in the investigation and the collection of evidence against Defendant, there is no evidence that they were *required* to do anything. The facts before the Court do not suggest that the federal government engaged in any compulsion. Voluntary cooperation by the Sheriff's Department or other state agencies does not give rise to a Tenth Amendment claim.

Defendant asks the Court for discovery regarding any cooperation between the federal government and the state in connection with the preparation of the Complaint. This request for discovery is denied. Defendant has not come forward with any evidence indicating that state agencies or officials were compelled to take any action in connection with the initiation of this criminal case or otherwise. Therefore, there is no basis for concluding that the discovery sought is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The Court will not allow Defendant to engage in a fishing expedition.

To the extent Defendant generally argues that federal enforcement of the CSA against individuals who are in compliance with California law violates the Tenth Amendment, the Court rejects this argument as well. As noted by the Ninth Circuit in Raich v. Gonzales, 500 F.3d 850, 867 n. 17 (9th Cir. 2007):

> The commandeering cases involve attempts by Congress to direct states to perform certain functions, command state officers to administer federal regulatory programs, or to compel states to adopt specific legislation. See, e.g., Printz v. United States, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); New York v. United States, 505 U.S. 144, 166, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). The Controlled Substances Act, by contrast, "does not require the [state legislature] to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." Reno v. Condon, 528 U.S. 141, 151, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

The federal government may criminalize behavior that is not criminalized under state law.

Defendant compares this case to Conant v. Walters, 309 F.3d 629, 639-48 (9th Cir. 2002) (Kozinski, J., concurring). In Conant, the Ninth Circuit held that the federal government policy of revoking a physician's license to prescribe controlled substances (or conducting an investigation that might lead to such revocation) based on the physician's professional "recommendation" of the use of medical marijuana violated the First Amendment. In his concurrence, Judge Kozinski opined that the federal government's policy also ran afoul of the Tenth Amendment because California relies on the recommendation of a state-licensed physician to define the line between legal and illegal marijuana use: "By precluding doctors, on pain of losing their DEA registration, from making a recommendation that would legalize the patients' conduct under state law, the federal policy makes it impossible for the state to exempt the use of medical marijuana from the operation of its drug laws. In effect, the federal government is forcing the state to keep medical marijuana illegal." Id. at 646.

This case is clearly distinguishable from Conant. The mere enforcement of the CSA against individuals who are in compliance with California law does not interfere with the state's scheme for legalizing medical marijuana. By enforcing its own laws, the federal government does not force California to keep medical marijuana illegal or make it impossible for individuals to comply with California's requirements with respect to the legal cultivation, transportation, possession, or use of medical marijuana.

Defendant has not established a violation of the Tenth Amendment. Therefore, Defendant's motion to dismiss the indictment on this ground is **DENIED**. The Court also denies Defendant's request for an evidentiary hearing to establish his compliance with the CUA.

B. Due Process Claim/ Entrapment by Estoppel

Defendant contends that this prosecution violates his due process rights because Defendant reasonably believed that his collective was lawful based on his research of California law, his consultation with an attorney, statements made by Barack Obama when

he was a presidential candidate in addition to statements made by other federal officials, and the Supreme Court's refusal to hear cases involving medical marijuana. Defendant argues that the Court should dismiss this case as a violation of his due process rights or, in the alternative, permit him to present an entrapment-by-estoppel defense at trial.

A criminal prosecution violates due process if it is the result of "entrapment by estoppel." United States v. Tallmadge, 829 F.2d 767, 773-75 (9th Cir. 1987). "Entrapment by estoppel" is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law. Id. at 773 (9th Cir. 1987). To succeed under this theory, the defendant must show "that the government affirmatively told him the proscribed conduct was permissible, and that he reasonably relied on the government's statement." United States v. Ramirez-Valencia, 202 F.3d 1106, 1109 (9th Cir. 2000). A defendant's reliance is reasonable if "a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." United States v. Lansing, 424 F.2d 225, 227 (9th Cir. 1970).

Defendant has not established that he is the victim of entrapment by estoppel. Defendant has not pointed to any affirmatively misleading statement by a *federal* official sanctioning his conduct under federal law. Defendant points to the following statement made by Barack Obama when he was a presidential candidate: "[M]y attitude is that if it's an issue of doctors prescribing medical marijuana as a treatment for glaucoma or as a cancer treatment, I think that should be appropriate because there really is no difference between that and a doctor prescribing morphine or anything else . . . . I think the basic concept that using medical marijuana in the same way with the same controls as other drugs prescribed by doctors, I think that's entirely appropriate. What I am not going to be doing is using Justice Department resources to try to circumvent state laws on this issue."[1]

Defendant also points to a statement by Ben LaBolt, Obama campaign spokesman, that: "Voters and legislators in the states . . . have decided to provide their residents suffering

---

[1] Interview of Presidential Candidate Sen. Barack Obama by Gary Nelson, editorial page editor for the Mail Tribune (Mar. 22, 2008) (available at http://granitestaters.com/cancidates/video_obama_02.html)

from chronic diseases and serious illnesses like AIDS and cancer with medical marijuana to relieve their pain and suffering.  Obama supports the rights of states and local governments to make this choice – through he believes medical marijuana should be subject to (U.S. Food and Drug Administration) regulations like other drugs."[2]  LaBolt also indicated that Obama would end U.S. Drug Enforcement Administration raids on medical marijuana suppliers in states with their own laws.  Id.

In addition, Defendant relies on certain statements by U.S. Attorney General, Eric Holder.  During a press conference on February 24, 2009, in response to a question whether raids of medical marijuana clubs established under state law represented American policy going forward, Holder stated, "No, what the president said during the campaign, you'll be surprised to know, will be consistent with what we'll be doing in law enforcement.  He was my boss during the campaign.  He is formally and technically and by law my boss now.  What he said during the campaign is now American Policy."[3]  On March 19, 2009, Holder explained that the Justice Department had no plans to prosecute pot dispensaries that were operating legally under state laws.[4]

Defendant's reliance on the above-quoted statements is problematic for several reasons.  First of all, as pointed out by the Government, Defendant does not state that he personally read or heard these statements prior to engaging in the conduct that forms the basis of this criminal case.  Furthermore, the comments by then-candidate Obama and his campaign spokesman cannot be deemed representations of the federal government regarding drug-prosecution policy.

Although Holder was Attorney General when he made the statements at issue, his

---

[2] Bob Egelko, Next President Might Be Gentler on Pot Clubs, San Francisco Chronicle, May 12, 2008 (available at http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/05/12/MNKK10FD53.DTL&type)

[3] Ryan Grim, Holder Vows to End Raids on Medical Marijuana Clubs, Huffington Post, Feb. 26, 2009 (avaliable at http://www.huffingtonpost.com/2009/02/26/holder-vows-to-end-raids_n_170119.html&cp)

[4] Josh Meyer and Scott Glover, Medical Marijuana Dispensaries Will No Longer Be Prosecuted, U.S. Attorney General Says, Los Angeles Times, March 19, 2009 (available at http://www.latimes.com/news/local/la-me-medpot19-2009mar19,0,4987571.story)

statements do not constitute affirmative representations that Defendant would not be prosecuted under federal law. Holder's comment that "what [Obama] said during the campaign is now American Policy" is vague and provides no real guidance as to what the so-called "American Policy" is. Similarly, Holder's statement that the Justice Department "had no plans" to prosecute pot dispensaries that were operating legally under state laws was a loose statement that left open the possibility the Justice Department could change its "plans" or could choose to prosecute medical marijuana dispensaries on a case-by-case basis.

Defendant has not identified any affirmative representations by the federal government that marijuana collectives formed and operated in compliance with California law would not be investigated or prosecuted under federal law under any circumstances. Moreover, unlike the cases in which convictions were reversed on the ground of entrapment by estoppel, nobody with authority at any time *personally* told Defendant that his actions were permissible under federal law. See, e.g., Cox v. Louisiana, 379 U.S. 559 (1965) (reversing conviction of persons who were arrested for picketing across the street from a courthouse because the defendants were given permission to hold their demonstration at that location by the Chief of Police); United States v. Tallmadge, 829 F.2d 767 (9th Cir. 1987)(defendant's conviction for being a felon in possession of a firearm was reversed because a federally licensed firearms dealer told him that he could purchase firearms after his prior felony conviction was reduced to a misdemeanor).

Even if Obama's and Holder's statements can be viewed as establishing a general policy against prosecuting marijuana dispensaries operating legally under state law, a reasonable person would not rely on these statements as an assurance that he or she would not be prosecuted under federal law. Defendant could have sought specific guidance regarding the applicability of federal law to his situation. However, Defendant admittedly did not contact anyone within the Department of Justice or any other federal agency.

In concluding that his actions did not violate federal law, Defendant also allegedly relied on California law, including the California Attorney General's "Guidelines for the Security and non-Diversion of Marijuana Grown for Medical Use," his attorney's advice, and

articles about the Supreme Court refusing to hear cases involving medical marijuana. The Court need not analyze these other sources of information because they are only relevant for purposes of determining the *reasonableness of Defendant's reliance on affirmative misrepresentations by the federal government*. See Talmadge, 829 F.2d at 775 (explaining that Tallmadge's reliance on the firearm dealer's misleading information was reasonable in light of his attorney's legal opinion and the comments of the state trial judge and the deputy district attorney at the probation hearing). Since there were no affirmative misrepresentations by the federal government, the Court's due process inquiry is at an end.

Defendant has not established that this prosecution is the result of entrapment by estoppel. Therefore, Defendant's motion to dismiss the Indictment for violation of due process is **DENIED**. Defendant's request to present an entrapment-by-estoppel defense at trial is deferred until the pretrial conference at which time the Court can consider all evidence that the defendant may wish to offer on this proposed defense.

C. Violation of U.S. Department of Justice Policy

Defendant contends that his prosecution is in direct conflict with U.S. Department of Justice Policy, specifically, a Department of Justice Memorandum dated October 19, 2009 ("Memorandum"). (Def. Ex. E.) Defendant argues that the Memorandum reaffirmed the federal policy of not prosecuting individuals who are in compliance with state law.

The Court does not find Defendant's prosecution to be inconsistent with the Memorandum. The Memorandum provides "guidance regarding resource allocation" and "does not 'legalize' marijuana or provide a legal defense to a violation of federal law." (Id. at 2.) The Memorandum explains:

> As a general matter, pursuit of these priorities [the prosecution of significant traffickers of illegal drugs and the disruption of illegal drug manufacturing and trafficking networks] should not focus federal resources in your States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana. For example, prosecution of individuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable state law, or those caregivers in clear and unambiguous compliance with existing state law who provide such individuals with marijuana, is unlikely to be an efficient use of limited federal resources. On the other hand,

> prosecution of commercial enterprises that unlawfully market and sell marijuana for profit continues to be an enforcement priority of the Department. To be sure, claims of compliance with state or local law may mask operations inconsistent with the terms, conditions, or purposes of those laws, and federal law enforcement should not be deterred by such assertions when otherwise pursuing the Department's core enforcement priorities.

(Id.) The Memorandum lists factors that may indicate illegal drug trafficking activity, including "amounts of marijuana inconsistent with purported compliance with state or local law" and "financial and marketing activities inconsistent with the terms, conditions, or purposes of state law, including evidence of money laundering activity and/or financial gains or excessive amounts of cash inconsistent with purported compliance with state or local law." (Id.) The Memorandum stresses, "[N]othing herein precludes investigation or prosecution where there is a reasonable basis to believe that compliance with state law is being invoked as a pretext for the production or distribution of marijuana for purposes not authorized by state law." (Id. at 3.) The determination of whether to prosecute marijuana cases is to be made on a "case-by-case basis." (Id.)

According to the Memorandum, an individual is not insulated from prosecution under the CSA just because he ostensibly complies with California law. Federal prosecuting authorities are free to investigate or prosecute individuals if, in their judgment, there is reason to believe that state law is being invoked to mask the illegal production or distribution of marijuana. Based on the evidence in this case, federal authorities apparently concluded that Defendant is operating a commercial enterprise that unlawfully sells marijuana for profit and determined that prosecution would be appropriate. The fact that Defendant disputes that his collective was a business run for profit does not preclude federal authorities from drawing their own conclusions and choosing to prosecute this case.

Even if Defendant's prosecution were contrary to the guidance set forth in the Memorandum, dismissal of the Indictment would not be warranted. Defendant has not pointed to any authority for dismissing an indictment because it is contrary to internal Department of Justice guidelines. See United States v. McInnis, 601 F.2d 1319, 1323 (5th Cir. 1979) (refusing to dismiss an indictment based on a policy set forth in an internal guideline of the Department of Justice). Indeed, the Memorandum specifies that it is not

intended "to create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter . . . . Rather, this memorandum is intended solely as a guide to the exercise of investigative and prosecutorial discretion." (Id. at 2.)

To the extent that Defendant alleges a violation of "American Policy" as conveyed in comments by Attorney General Holder, as discussed above, it is unclear exactly what this purported "American Policy" is. Holder did not promulgate an official policy of never investigating or prosecuting marijuana dispensaries that are in compliance with state law.

Therefore, Defendant's motion to dismiss the Indictment because the prosecutor is acting in direct conflict with the United States Department of Justice Policy is **DENIED**.

### III. CONCLUSION

For the reasons discussed above, Defendant's motions to dismiss the Indictment [Doc. # 22] are **DENIED**.

**IT IS SO ORDERED.**

DATED: March 2, 2010

_____
Honorable Barry Ted Moskowitz
United States District Judge