# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br>v.<br><br>JAMES DEAN STACY,<br><br>                             Defendant. | Case No. 09cr3695 BTM<br><br>**ORDER DENYING DEFENDANT'S MOTION TO PRESENT CERTAIN DEFENSES AND GRANTING UNITED STATES' MOTIONS IN LIMINE TO PRECLUDE DEFENSES** |

      Defendant James Dean Stacy has filed a motion to allow him to present an entrapment-by-estoppel defense at trial, or, in the alternative, a public authority defense. The United States has filed motions in limine to preclude an entrapment defense, advice of counsel defense, "medical marijuana" defense, medical necessity defense, and public authority defense. For the reasons discussed below, the Court **DENIES** Defendant's motion and **GRANTS** the United States' motions in limine.

## I. BACKGROUND

      From June 2009 until September 2009, Defendant operated what he claims was a "medical marijuana collective" called "Movement in Action," located at 1050 South Santa Fe Avenue, Vista, California. According to Defendant, he took great care to make sure that his cooperative was formed and operated in compliance with California law, specifically the

Compassionate Use Act ("CUA") and the Medical Marijuana Program Act ("MMPA"), Cal. Health & Safety Code §§ 11362.5, et seq..

In July and August of 2009, Defendant sold marijuana on three separate occasions to an undercover detective from the San Diego Sheriff's Office. Each time, Defendant charged $60 for an eighth of an ounce of marijuana.

On September 9, 2009, there was a county-wide raid, which resulted in the arrests of Defendant and thirteen other individuals who operated "marijuana collectives" in San Diego. DEA agents executed search warrants at Defendant's home and business, seizing 96 marijuana plants, marijuana-laced food products, marijuana-related equipment and paraphernalia, business records, and a fully-loaded FEG semi-automatic pistol.

In an Indictment filed on October 7, 2009, Defendant was charged with (1) conspiracy to manufacture and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) manufacturing 96 marijuana plants in violation of 21 U.S.C. § 841(a)(1); and (3) possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On December 9, 2009, Defendant filed (1) a motion to dismiss the Indictment on the ground that it violated the Tenth Amendment; (2) a motion to dismiss the Indictment as a violation of due process; and (3) a motion to dismiss the Indictment because the prosecutor was acting in direct conflict with the U.S. Department of Justice policy. In an order filed on March 2, 2010, the Court denied Defendant's motions to dismiss the Indictment. However, the Court deferred ruling on Defendant's request to present an entrapment-by-estoppel defense so that the Court could consider all of the evidence that Defendant may wish to offer on this proposed defense closer to trial.

On June 17, 2010, a Superseding Indictment was filed in the case. The Superseding Indictment charges separate counts for each sale to the undercover detective (21 U.S.C. § 841(a)(1)), in addition to counts for possession with intent to distribute (21 U.S.C. § 841(a)(1)), manufacture of 50 marijuana plants and more (21 U.S.C. § 841(a)(1)), and possession of a firearm in furtherance of drug-trafficking crimes (18 U.S.C. § 924(c)(1)).

## II. **DISCUSSION**

### A. **Entrapment by Estoppel**

Defendant's primary argument is that he is entitled to present an entrapment by estoppel defense. Upon review of the evidence submitted by Defendant in support of his motion, the Court concludes that the evidence is insufficient to support a defense of entrapment by estoppel. See United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir. 1991) (explaining that a district court's determination that there exists no evidence sufficient to raise a valid defense is analogous to a determination that a jury instruction relating a defendant's theory of the case is not warranted by the evidence).

"Entrapment by estoppel" is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law by telling him or her that certain conduct is legal. United States v. Tallmadge, 829 F.2d 767, 773 (9th Cir. 1987); Brebner, 951 F.2d. at 1025. To succeed under this theory, the defendant must show "that the government *affirmatively* told him the proscribed conduct was permissible, and that he reasonably relied on the government's statement." United States v. Ramirez-Valencia, 202 F.3d 1106, 1109 (9th Cir. 2000) (emphasis added). The defendant is required to show reliance "either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who, like licensed firearms dealers, has been granted the authority from the federal government to render such advice." Brebner, 951 F.2d at 1027. A defendant's reliance is reasonable if "a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." United States v. Lansing, 424 F.2d 225, 227 (9th Cir. 1970).

None of the evidence submitted by Defendant establishes that a federal government official or authorized agent affirmatively told Defendant that his operation of a medical marijuana collective was permissible – i.e., lawful – under federal law. A review of the statements and information upon which Defendant claims he relied reveals that no federal official ever assured Defendant that compliance with California's drug laws rendered his

conduct lawful under federal law.

### 1. Statements by Presidential Candidate Obama

Defendant points to statements made by Barack Obama when he was a presidential candidate. (Def. Ex. A, Clip Nos. 1, 3, and 4; Ex. F.) As a presidential candidate, Barack Obama expressed his openness to doctors prescribing medical marijuana as palliative medicine, subject to FDA regulation, and indicated that he would not use Justice Department resources to try to prosecute medical marijuana users or circumvent state laws regarding doctors prescribing medical marijuana because there are more pressing concerns such as terrorism and violent crime. (Id.) In addition, a campaign spokesman reportedly said that Obama would end U.S. Drug Enforcement Administration raids on medical marijuana suppliers in states with their own laws permitting medical marijuana use. (Def. Ex. F, p. 17.) However, Obama also expressed concern regarding "mom and pop" shops and people growing their own medical marijuana because of the difficulty in regulating such conduct. (Def. Ex. A, Clip Nos. 1, 3, and 4.)

As discussed in the Court's prior order, a presidential candidate clearly is not empowered to speak for the federal government regarding the application of federal drug laws or any other matter. No reasonable person believes that campaign promises bind the candidate in the event that he or she is elected. At any rate, the statements lack specificity and do not make any representations regarding changing federal law to make the use, cultivation, and distribution of medical marijuana legal. In fact, in one of the video clips submitted by Defendant, presidential candidate Obama admits that he would probably be unwilling to use "political capital" to change federal drug laws when he must deal with issues such as healthcare reform and ending the war in Iraq. (Def. Ex. A, Clip No. 4.)

### 2. Statements by Federal Governmental Officials Regarding Prosecution Policy

In addition to the statements of presidential candidate Obama, Defendant also relies on the following statements made by or attributed to U.S. Attorney General Eric Holder and

other federal government officials:

- Statement by Holder to reporters in January or February 2009 (as reported by CNBC): "Consistent with what the President said when he was campaigning, our focus will be on people and organizations that are growing and cultivating substantial amounts of marijuana and doing so in a way that's inconsistent with federal law and state law." (Def. Ex. A., Clip No. 5.)

- February 24, 2009 response by Holder to a question posed at a press conference regarding whether Holder expected DEA raids of medical marijuana dispensaries to continue: "[N]o . . . What the president said during the campaign, you'll be surprised to know, will be consistent with what we'll be doing in law enforcement. He was my boss during the campaign. He is formally and technically and by law my boss now. What he said during the campaign is now American Policy." (Def. Ex. A, Clip No. 6.)

- February 2009 statement by White House Spokesman Nick Shapiro in response to DEA raids of medical cannabis collectives in California: "The President believes that federal resources should not be used to circumvent state laws, and as he continues to appoint senior leadership to fill out the ranks of the federal government, he expects them to review their policies with that in mind." (Def. Ex. C, pp. 4, 7.)

- March 18, 2009 statements by Holder to the effect that the Justice Department has no plans to prosecute pot dispensaries that are operating legally under state laws, and that that the priority of the new administration is to go after egregious offenders operating in violation of both federal and state law. (Def Ex. E.)

- May 20, 2009 memorandum issued by the White House stating the "general policy" of President Obama's administration that "preemption of State law by executive departments and agencies should be undertaken only with full consideration of the legitimate prerogatives of the States and with a sufficient legal basis for preemption." (Def. Ex. I.)[1]

- October 19, 2009 U.S. Department of Justice Memorandum providing clarification and guidance to federal prosecutors in states that have enacted laws authorizing the medical use of marijuana: "As a general matter, pursuit of

---

[1] This memorandum does not say anything about enforcement of the federal drug laws and does not have any bearing on the issues before the Court. The federal government's enforcement of federal drug laws does not *preempt* state law. California is free to pass and enforce its own laws regarding medical marijuana. However, the fact that an individual may not be prosecuted under California law does not provide him or her with immunity under federal law. Indeed, in the State of California's Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use ( Def. Ex. B to Motion to Dismiss Indictment), the California Attorney General explains that the CSA, which "reflects the federal government's view that marijuana is a drug with 'no currently accepted medical use,'" does not preempt California's medical marijuana laws and that "no legal conflict exists merely because state law and federal law treat marijuana differently." Defendant claims that "[s]peakers at various conferences that I attended claimed that [the preemption memorandum] was President Obama's action of solidifying his earlier statements with respect to medical marijuana." (Def. Decl. ¶ 24.) Obviously, these speakers' interpretations of the memorandum do not bind the Government.

- May 13, 2010 response by Holder to questions posed at a House Judiciary Committee Hearing regarding the Department of Justice's policy regarding medical use of marijuana and the objective processes that are being used in order to determine whether individuals are in "clear and unambiguous" compliance with state law: "It's done on a case by case basis. We look at the state laws, and what the restrictions are, what the – how the law is – how the law is constructed, and there are a number of factors in that memo – that are – are guides. Is marijuana being sold consistent with state law? Are arms – are firearms somehow associated with the sale? . . . [I]f the entity is, in fact, operating consistent with state law, and is not – does not have any of those factors involved that are contained in that Deputy Attorney General memo, and given, again, the limited resources that we have and our determination to focus on major traffickers, that would be inconsistent with the policy as we have set it out." (Def. Ex. J.) (Again, this statement was made many months after the acts alleged in the Indictment, meaning that Defendant could not have relied on them).[2]

these priorities should not focus federal resources in your States on individuals whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana." (Ex. E to Def.'s Motion to Dismiss Indictment.) (Defendant could not have relied on this specific memorandum because it was issued after the acts alleged in the Indictment.)

None of these statements constitute affirmative representations that Defendant's operation of a medical marijuana dispensary is lawful under federal law. At best, these statements show that in early 2009, when former President Bush personnel still held key positions in the federal government, the Obama administration did not *anticipate* that it would continue DEA raids of medical marijuana dispensaries complying with state law, because the priority of the administration was to prosecute egregious offenders and not to divert federal resources to circumventing state laws. The White House indicated that as President Obama appoints senior leadership, he expects them to *review* their drug prosecution policies, keeping in mind the administration's stance on the efficient use of federal resources. (Def. Ex. C, pp. 4, 7.) No promise was made that the DEA would never raid medical marijuana dispensaries claiming to operate in compliance with state law or that individuals operating such dispensaries would not be prosecuted.

---

[2] It appears that this video clip (and perhaps other video clips and articles cited by Defendant) was obtained from the website http://www.friendsofccl.com. Charles C. Lynch is the former owner and "managing caregiver" for Central Coast Compassionate Caregivers in Morro Bay. In 2008, Mr. Lynch was convicted in federal court for violating federal drug laws. The website solicits donations on behalf of Mr. Lynch and provides links, videos, and other information pertaining to medical marijuana. To the extent that Defendant obtained information from this website, the Court questions whether Defendant actually relied on it.

The policy that eventually emerged after the transition of power concentrates on providing "guidance regarding resource allocation" and "does not 'legalize' marijuana or provide a legal defense to a violation of federal law." (DOJ Memorandum at 2.) The DOJ Memorandum, which was published after the acts charged in the Indictment, emphasizes that marijuana cases should be reviewed for prosecution on a "case-by-case basis" and lists factors that may indicate illegal drug trafficking activity of potential federal interest. The Memorandum explains:

> [N]othing herein precludes investigation or prosecution where there is a reasonable basis to believe that compliance with state law is being invoked as a pretext for the production or distribution of marijuana for purposes not authorized by state law. Nor does this guidance preclude investigation or prosecution, even when there is clear and unambiguous compliance with existing state law, in particular circumstances where investigation or prosecution otherwise serves important federal interests.

(Id. at 3.)

Even assuming the statements at issue could reasonably be interpreted as establishing a policy that operators of medical marijuana dispensaries in compliance with state law will not be prosecuted, there is still no affirmative statement that Defendant's conduct is *lawful* under federal law. See Ramirez-Valencia, 202 F.3d at 1109 (explaining that although INS Form I-294 contained the misstatement that "any deported person who within five years returns without permission is guilty of a felony," the form did not expressly tell the defendant that it would be *lawful* for him to return to the United States after five years). A reasonable belief that one will not be *prosecuted* is not the same thing as a reasonable belief that one's actions *do not violate federal law*. Defendant has not identified any cases where the entrapment-by-estoppel defense has been applied where a defendant relied on a prosecution policy as opposed to an affirmative representation of legality.

Good reason exists for not permitting a defendant to rely on a general non-prosecution policy. In this case, for example, even if the published policy was not to prosecute marijuana dispensaries that are in compliance with state law, the decision whether or not to prosecute a particular dispensary is one committed to the Department of Justice. Under our criminal justice system, the Government retains "broad discretion" regarding whom to prosecute.

1  Whyte v. United States, 470 U.S. 598, 608 (1985). "[S]o long as the prosecutor has probable
2  cause to believe that the accused committed an offense defined by statute, the decision
3  whether or not to prosecute, and what charge to file or bring before a grand jury, generally
4  rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). A holding
5  that the Government is estopped from bringing a case if the prosecution is, in the court's
6  opinion, contrary to an existing prosecution policy would constitute improper judicial
7  interference with prosecutorial decision-making and discretion.

      3.  Supreme Court Denials of Certiorari
10         Defendant also claims that he relied on articles reporting on the Supreme Court's
11 decision to deny certiorari in medical marijuana cases. (Def. Decl. ¶¶ 25-29.) The Court is
12 not persuaded by this argument. The Supreme Court's denial of certiorari cannot reasonably
13 be construed as an indication by the federal government that it will not prosecute individuals
14 in compliance with California's medical marijuana laws or that operation of a medical
15 marijuana dispensary is lawful under federal law. The Supreme Court has made it clear that
16 "denial of a writ of certiorari imports no expression of opinion upon the merits of the case."
17 Teague v. Lane, 489 U.S. 288, 296 (1989) (quoting United States v. Carver, 260 U.S. 482,
18 490 (1923)). Therefore, it is irrelevant that Defendant construed the Supreme Court's denials
19 of certiorari and media reports about these cases to mean "that the judicial branch of the
20 federal government, as well as the executive branch, would not interfere with citizens of
21 California who were in compliance with state law." (Def. Decl. ¶ 25.)
22         The Court notes that it appears that Defendant selectively relies on court decisions
23 (or lack thereof). Defendant does not mention cases unfavorable to his position such as
24 United States v. Rosenthal, 454 F.3d 943, 947 (9th Cir. 2006), where the Ninth Circuit agreed
25 with the district court's decision to exclude evidence or argument relating to Defendant's
26 "medical marijuana" defense and entrapment-by-estoppel defense. See also United States
27 v. Rosenthal, 2007 WL 2012734 (N.D. Cal. July 6, 2007) (denying motion for new trial which
28 argued that, inter alia, the court erred in precluding argument about medical marijuana and

precluding witnesses who would testify about medical marijuana); United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1108 (E.D. Cal. 2008) (precluding entrapment by estoppel defense and excluding evidence and argument relating to the medicinal use of marijuana); United States v. Smith, 2008 WL 1909224 (C.D. Cal. Apr. 28, 2008) (precluding evidence of entrapment by estoppel because there was no evidence that state officials with authority to bind the federal government affirmatively made representations that defendants' cultivation of medical marijuana was lawful under federal law). Defendant cites no cases decided after Obama became President which indicate a change in the law.

Defendant also selectively picks and chooses statements within the articles submitted to the Court. For example, a Los Angeles Times article dated May 19, 2009, bears the erroneous headline, "Supreme Court action upholds California's medical pot law," but also states: "*Federal officials have maintained that all marijuana use is illegal, even in states such as California.* But Atty. Gen. Eric H. Holder Jr. said recently that the federal government would not devote *great effort* to prosecuting low-level marijuana cases." (Def. Ex. G, p. 20) (emphasis added). The article goes on to explain, "Federal authorities say *they can arrest and prosecute all who use or sell marijuana in states that have authorized medical use of the drug.*" (Def. Ex. G, p. 21) (emphasis added). Apparently, Defendant chose to ignore these portions of the article.

### 4. Advice of Counsel

Defendant also relies on the fact that he consulted an attorney to make sure that his collective was legal. He does not, however, submit a declaration from the attorney. According to Defendant, this "specialized attorney" never told him that operating the collective would violate federal law. "This attorney's advice to me confirmed my earlier beliefs that the federal government would not charge me with a crime as long as I was in compliance with state law." (Def. Decl. ¶ 32.) It is unclear whether the attorney made comments suggesting that federal law would not be violated or whether the attorney remained silent on the issue. Either way, the attorney was not someone authorized by the

federal government to render an opinion on the matter.  Although advice of counsel may be considered in determining the reasonableness of a defendant's reliance on affirmative misrepresentations by the federal government – see Tallmadge, 829 F.2d at 775 – here, there were no affirmative misrepresentations by the Government.

The one official who could speak with authority and bind the federal government with respect to whether Defendant would be prosecuted was the United Sates Attorney for this district.  Defendant, however, did not avail himself of this obvious source of guidance; Defendant never contacted the U.S. Attorney's Office to inquire whether the federal government would consider prosecuting him if he opened the marijuana dispensary.  In light of the DEA raids in early 2009, it was wholly unreasonable for Defendant to launch into a venture that clearly violated federal law in reliance on selective sound bites and snippets from articles instead of assurances from the local prosecuting authority.

In sum, Defendant cannot establish an entrapment-by-estoppel defense because no federal government official ever affirmatively represented to Defendant that his operation of a medical marijuana dispensary in compliance with state law was legal under federal law. Defendant chose to rely on a prosecution policy that contained no guarantee that Defendant would not be raided by the DEA or prosecuted for violating federal drug laws.  Instead of directing pertinent inquiries to the local U.S. Attorney's Office, which would have been the reasonable thing to do, Defendant decided to run the risk of prosecution.  Now that the Government has, in its discretion, decided to prosecute Defendant, Defendant cannot rely on an entrapment-by-estoppel defense.

## B. Public Authority Defense

In the alternative to an entrapment-by-estoppel defense, Defendant gave notice of a possible intent to assert a defense of public authority.  However, Defendant has not proffered evidence sufficient to establish such a defense.

Ninth Circuit Model Criminal Jury Instruction 6.10 sets forth the elements of such a

1 defense:

2 If a defendant engages in conduct violative of a criminal statute at the request of a government enforcement officer, with the reasonable belief that the defendant is acting as an authorized government agent to assist in law enforcement activity, then the defendant may not be convicted of violating the criminal statute, because the requisite criminal intent is lacking. The government must prove beyond a reasonable doubt that the defendant did not have a reasonable belief that [he] [she] was acting as an authorized government agent to assist in law enforcement activity at the time of the offense charged in the indictment.

7 There is no evidence that Defendant reasonably believed that a government agent authorized him to engage in illegal acts. See United States v. Bear, 439 F.3d 565 (9th cir. 2006). Therefore, Defendant is precluded from presenting this defense.

## C. Other Miscellaneous Defenses

The United States has filed motions in limine to preclude Defendant from presenting an advice of counsel defense, a medical necessity defense, and a "medical marijuana" defense. Defendant has not opposed the motions, and the motions are granted.

Reasonable reliance on the advice of counsel is a defense to an offense that has willfulness as an element. Williamson v. United States, 207 U.S. 425, 453 (1908); United States v. Nordbrock, 828 F.2d 1401, 1404 (9th Cir. 1987). However, the crimes with which Defendant is charged do not require knowledge of the law or intent to violate the law. 21 U.S.C. § 841(a)(1) provides that it is unlawful "for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Section 841(a)(1) requires knowledge that the defendant was manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance. The Government is not required to prove knowledge of the illegality. See Bryan v. United States, 524 U.S. 184, 193 (1998) ("As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'") Therefore, an advice-of-counsel defense is not available to Defendant.

A medical necessity defense is also unavailable to Defendant. In United States v.

<u>Oakland Cannabis Buyers' Cooperative</u>, 532 U.S. 483 (2001), the Supreme Court held that medical necessity is not a defense to manufacturing and distributing marijuana: "In the case of the Controlled Substances Act, the statute reflects a determination that marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project)." <u>Id.</u> at 491. Accordingly, Defendant is precluded from presenting a medical necessity defense.

The Government also seeks to preclude a "medical marijuana" defense that focuses on Defendant's beliefs about the lawfulness of his actions and his motivations for selling marijuana. Specifically, the Government moves to preclude any reference to state "medical marijuana" laws, including any evidence, testimony, questioning, or arguments before the jury regarding the following propositions:

1. It is lawful to possess, manufacture, sell or distribute "medical marijuana" (or that Defendant believed it was lawful).

2. Defendant was in compliance with California state law regarding "medical marijuana" and/or California's Compassionate Use Act (or that Defendant believed he was in compliance or that his actions were lawful).

3. Defendant was ignorant of federal laws regarding marijuana and/or possession of firearms in furtherance of marijuana offenses.

4. Defendant was mistaken about federal laws regarding marijuana and/or possession of firearms in furtherance of marijuana offenses.

5. Marijuana has legitimate medical value (or that Defendant believed it had legitimate medical value).

6. Marijuana should not be a Schedule I controlled substance.

7. Marijuana should not be illegal.

8. Defendant made efforts (consulting with an attorney, corresponding with state officials, research, etc.) to comply with medical marijuana laws.

9. Defendant and/or his customers were "medical marijuana" patients.

10. Defendant had a medical and/or humanitarian motive or justification for manufacturing and distributing marijuana.

The Court agrees that Defendant should not be permitted to present a "medical marijuana" defense that he was cultivating and distributing marijuana for medicinal purposes

in compliance with state law and had a good faith belief that he was acting lawfully. As already discussed, Defendant's compliance with state law does not grant him immunity under federal law, and Defendant's belief that he was acting lawfully is irrelevant as to criminal liability. Therefore, the Court grants the Government's motion to preclude a "medical marijuana" defense and excludes evidence and argument pertaining to: Defendant's compliance with California medical marijuana laws, Defendant's personal motivation for manufacturing and distributing marijuana, the medical reasons why Defendant or his customers used marijuana, Defendant's belief that he was acting lawfully under federal law, Defendant's ignorance of federal law, Defendant's efforts to comply with federal law, the medicinal value of marijuana (or Defendant's belief therein), and whether marijuana should a Schedule I controlled substance or illegal under federal law.[3] See United States v. Rosenthal, 334 Fed. Appx. 841 (9th Cir. June 11, 2009) (affirming district court's decision to exclude evidence that defendant was cultivating marijuana for medicinal purposes and had a good faith, reasonable belief that he was acting lawfully in doing so); United States v. Scarmazzo, 554 F. Supp. 2d 1102, 1105 (E.D. Cal. 2008) (excluding evidence of reliance on or compliance with state law, medicinal use of marijuana, and evidence or argument aimed toward jury nullification).

However, the Court expects that it may be inevitable that evidence will come out regarding the fact that Defendant was operating a purported medical marijuana dispensary and that marijuana was dispensed to individuals presenting medical marijuana cards. See United States v. Rosenthal, 2007 WL 2012734, at *3 (N.D. Cal. July 6, 2007) ("While such evidence is not a valid defense to the federal charges, evidence of medical marijuana would inevitably come up, and did come up, during the trial.") Such evidence may directly relate to the gun charge. Therefore, the Court will not issue a blanket exclusion of evidence pertaining to the fact that Defendant operated a purported medical marijuana dispensary (although no evidence should be introduced regarding whether the dispensary complied with

---

[3] These facts and circumstances may be relevant as mitigating factors at sentencing in the event that Defendant is found guilty at trial.

California law) and that clients purporting to be medical marijuana users purchased marijuana from Defendant. Such evidence may be allowed if it is admissible for some purpose other than establishing one of the defenses precluded by this order.

If, before or during trial, there is any question regarding what argument, testimony, or other evidence is permissible on the subject of medical marijuana, counsel should raise the question with the Court outside the presence of the jury. The Court is open to further requests to rule on the admissibility of specific evidence and proposed statements by counsel during opening and closing statements. The Court has the utmost respect for counsel in this case and expects that they will seek a ruling of the Court before asking a question, presenting evidence, or making an argument on matters that may not be permissible under this order.

### III. CONCLUSION

For the reasons discussed above, Defendant's motion to allow him to present an entrapment-by-estoppel defense at trial, or, in the alternative, a public authority defense is **DENIED**. The United States' motions in limine to preclude an entrapment defense, advice-of-counsel defense, "medical marijuana" defense, medical necessity defense, and public authority defense are **GRANTED**.

**IT IS SO ORDERED.**

DATED: July 12, 2010

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge